## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

      Plaintiff,

      v.

EING-MING HUANG,

      Defendant.

Civil Action No. TDC-14-3323

## MEMORANDUM OPINION

This breach of contract case is before the Court on a Motion for Default Judgment filed by Plaintiff Federal National Mortgage Association ("Fannie Mae"). ECF No. 7. Having reviewed the pleadings and supporting documents, the Court finds no hearing necessary. *See* Local Rule 105.6 (D. Md. 2014). For the following reasons, the Motion for Default Judgment is GRANTED.

## BACKGROUND

On May 21, 2009, Belle Property at Dundalk, LLC ("Belle Property") executed and delivered to Arbor Commercial Funding, LLC ("Arbor") a note for a $4,160,000.00 general nonrecourse loan for the purchase of a multifamily apartment complex located in Baltimore County, Maryland (the "Note"). The loan was guaranteed by Belle Property Management, LLC ("Belle Property Management"), *see* Compl., Ex. C, ECF No. 3-2 (the "Guaranty"), and secured by the transfer to Arbor of the apartment's Deed of Trust and Assignment of Rents (the "Deed"). In addition, Defendant Eing-Ming Huang ("Huang") signed an Exceptions to Non-Recourse Guaranty in which he, as Belle Property's "key principal," "absolutely, unconditionally, and

irrevocably guarantee[d] to [Arbor] the full and prompt payment when due . . . of all amounts for which [Belle Property] is personally liable . . . by reason of acceleration or otherwise" under the terms of the loan. Am. Compl., Ex. D at 1, ECF No. 3-2.

The Note specified that the loan would have an annual interest rate of 5.69 percent, that payments were due in monthly installments, and that late payments would be assessed a charge of five percent of the past due balance. The Note further specified that so long as a monthly installment or any other payment remained past due for 30 days or more, in addition to the late charge, interest would accrue on the unpaid principal balance at the "default rate": the lesser of (1) four percent above the annual interest rate, or (2) the maximum interest rate allowed by law.

As defined by the Deed, an "Event of Default" would include the failure to make timely loan payments and the existence of any additional lien or encumbrance on the property. The Note provided that upon an "Event of Default," Arbor could accelerate the loan balance immediately and, without any prior notice, require payment in full, including the entire unpaid principal balance and any unpaid interest. Upon acceleration, Belle Property would also be required to pay a prepayment premium, the amount of which would be computed in accordance with Schedule A of the agreement. Once an Event of Default occurred, Belle Property was also obligated to remit all rent payments from the property to Arbor. Lastly, the Note obliged Belle Property to pay all expenses and costs, including attorney's fees, that Arbor might incur as a result of a default. Under the terms of the Note, Belle Property would become personally liable for the loan upon, among other events, the filing of a voluntary bankruptcy.

Arbor later assigned its interest in the loan and the apartment complex to Fannie Mae. Then, on or about May 1, 2014, Belle Property failed to render the required monthly loan payment. In a letter dated May 14, 2014, Fannie Mae formally notified Belle Property and

Huang that the failure to pay constituted an Event of Default, and that Fannie Mae was exercising its contractual right to accelerate the loan and require immediate and full payment of the outstanding loan balance.  On July 17, 2014, Fannie Mae discovered another Event of Default:  that a $10,400 lien had been placed on the apartment complex by Baltimore County, Maryland.  In addition, after being notified of the initial Event of Default in May 2014, Belle Property failed to make any additional monthly payments, pay the accelerated loan amount, or remit to Fannie Mae any rental payments received from the complex.  In September 2014, Belle Property Management voluntarily declared bankruptcy.  To date, Belle Property, Belle Property Management, and Huang have all failed to pay off the outstanding loan balance.  In addition, none of them has remitted any of the rent monies earned from the complex since the initial default.

On October 22, 2014, Fannie Mae filed a Complaint against Huang in this Court, which it amended on October 28, 2014, alleging breach of contract, based on Huang's failure to pay Belle Property's obligations under the loan, and conversion, based on the failure to remit rents.  In the Amended Complaint, Fannie Mae seeks $4,160,000.00 in damages for the breach or, in the alternative, $211,704.00 in converted rents, as well as attorney's fees, costs, and post-judgment interest.  Huang was served with the Summons and Amended Complaint on November 5, 2014, but he failed to file a responsive pleading or otherwise defend by the respective deadline.  On December 12, 2014, Fannie Mae filed a Motion for Clerk's Entry of Default, and a default was entered that day.  On December 18, 2014, Fannie Mae filed a Motion for Default Judgment against Huang seeking damages in the amount of $4,862,191.53, computed as follows: $3,885,913.18 in loan principal, $159,689.45 in loan interest, $99,306.68 in default interest, $7,235.52 in late charges, $690,184.63 in prepayment premiums, $187,430.00 in legal fees, and

$88,679.18 in other costs related to maintenance of the complex, minus $256,246.11 in escrow and reserve monies, and debtor-in-possession payments.  To date, Huang has not responded to the entry of default or to Fannie Mae's Motion for Default Judgment.

## DISCUSSION

### I.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Under Rule 55(b)(2), after a default has been entered by the clerk, the court may, upon the plaintiff's application and notice to the defaulting party, enter a default judgment. Fed R. Civ. P. 55(b)(2). A defendant's default does not, however, automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[T]rial judges are vested with discretion which must be liberally exercised, in entering [default] judgments and in providing relief therefrom."); *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002).  The United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but default judgment may be appropriate "when the adversary process has been halted because of an essentially unresponsive party."  *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005); *see H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) ("[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party.  In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.").

4

In reviewing a Motion for Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint relating to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001). However, it remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. *Id.*; *see also* 10A C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability."). If liability is established, the court must then determine the appropriate amount of damages. *See Ryan*, 253 F.3d at 780–81. As to damages, the court cannot accept as true the factual allegations of the plaintiff, but must instead make an independent determination. *See Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *Lawbaugh*, 359 F. Supp. 2d at 422. To do so, the court may conduct an evidentiary hearing, *see* Fed. R. Civ. P. 55(b)(2), or may dispense with a hearing if there is an adequate evidentiary basis in the record from which to calculate an award. *See Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.").

## II.    Choice of Law

The Note contains a choice-of-law provision specifying that the agreement "shall be governed by the law of the jurisdiction in which the Land is located." Am. Compl., Ex. B at 9, ECF No. 3-2. Because the loan was executed for property located in Baltimore County, Maryland, Maryland law governs.

### III.    Liability

In Maryland, "to prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). Under this standard, Fannie Mae's allegations, taken as true, *see Ryan*, 253 F.3d at 780, establish that Huang owed Fannie Mae a contractual obligation and that he breached that obligation. As to the contractual obligation, under the Exceptions to Non-Recourse Guaranty, Huang "absolutely, unconditionally, and irrevocably guarantee[d]" payment to Fannie Mae of all obligations under the loan for which Belle Property was personally liable. Am. Compl., Ex. D at 1.

As to the breach, on or about May 1, 2014, Belle Property failed to make its required loan payment, a failure that constituted a default. On May 14, 2014, as a result of Belle Property's default, the loan was accelerated, and Belle Property became obligated to immediately pay back the entire balance owed to Fannie Mae. Belle Property failed to do so. Belle Property also defaulted when Baltimore County, Maryland placed a $10,400 lien on the apartment complex, when it failed to remit rental payments received from tenants of the complex, and when it continued to fail to pay the accelerated loan or to make any payments toward the loan at all. On September 26, 2014, Belle Property Management filed a voluntary petition for bankruptcy, which made it personally liable for the loan under the terms of the Note. *See* Compl., Ex. G, ECF No. 3-2; Compl., Ex. B at 5-6 ¶ 9(c) (as amended by Schedule B), ECF No. 3-2; Compl., Ex. E at B-1, ECF No. 3-2. As guarantor, Huang was then obligated to pay Belle Property's balance in full. Huang failed to do so. Huang's failure to discharge Belle Property's obligations under the Note is a breach of his contractual obligation to Fannie Mae under the Guaranty and Exceptions to Non-Recourse Guaranty. Huang is thus liable to Fannie Mae for that breach.

Because Huang is liable to Fannie Mae for breach of contract, the Court need not, so does not, address Fannie Mae's alternate theory of liability related to the conversion of rent monies.

## IV.   Damages

Having found that Huang is liable for breach of contract, the Court turns to the question of damages.  By the terms of the Note, Guaranty, and Exceptions to Non-Recourse Guaranty, Huang is liable to Fannie Mae for Belle Property's obligations under the loan, which, because that loan is in default, include (1) the outstanding loan balance, (2) interest, (3) default interest, (4) late charges, (5) a prepayment premium, (6) attorneys' fees related to the default, and (7) costs related to the default.  As to specific amounts, Fannie Mae asserts that Huang owes (1) $3,885,913.18 for the outstanding loan balance, (2) $159,689.45 in interest, (3) $99,306.68 in default interest, (4) $7,235.52 in late charges, (5) $690,184.63 in prepayment premiums, (6) $187,430.00 in attorneys' fees, and (7) $88,678.18 in other charges, for a total unpaid debt of $5,118,437.64, which is reduced to $4,862,191.46 after escrow and reserve monies are credited. In support of these figures, Fannie Mae submits the Affidavit of its attorney, who attests, under oath, that these figures are accurate.  *See* Aff. Lisa Rosen, ECF No. 7-1.

However, in the Amended Complaint, Fannie Mae sought judgment "in the amount of $4,160,000.00, which includes indebtedness owed under the Guaranty; and/or . . . costs and expenses incurred by Plaintiff to enforce the Guaranty, including attorneys' fees to be determined at trial." Am. Compl. at 14.  Where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. *In re Genesys Data Techs., Inc.,* 204 F.3d 124, 132 (4th Cir. 2000) ("When a complaint demands a specific amount of damages, courts have generally held that a default judgment cannot award additional damages . . . because the defendant could not reasonably have expected that his damages would exceed

7

that amount."). Thus, Fannie Mae may recover only $4,160,000.00 of the damages it seeks, which include the principal balance due, interest due, default interest, late charges, prepayment premiums, and other categories of damages.

Although the Amended Complaint separately sought "costs and expenses incurred by Plaintiff to enforce the Guaranty, including attorneys' fees," for which Huang is liable under the Note, Guaranty, and Exceptions to Non-Recourse Guaranty, Fannie Mae has not provided proof of such costs and expenses with sufficient specificity for the Court to award them as part of the default judgment. For example, the affidavit on damages fails to provide sufficient information to identify the nature of some of the listed items and does not identify which items, if any, constitute costs and expenses associated with the enforcement of the Guaranty. *See* Aff. Lisa Rosen ¶ 8. Also, although the affidavit provides a figure for attorney's fees, it does not provide any billing records or other information to substantiate the charges, nor does it provide sufficient information on billing rates to allow for a proper lodestar calculation of the fees. *See* Local Rule Appendix B: Guideline 3 (D. Md. 2014) (providing guidelines on appropriate billing rates based on the experience of the attorney). Thus, no attorney's fees or costs will be awarded on this record. Within 14 days of the Order on this Motion, Fannie Mae may submit additional documentation to substantiate attorney's fees and costs associated with the enforcement of the Guaranty, which may result in an amended default judgment.

## CONCLUSION

For the foregoing reasons, the Motion for Default Judgment is GRANTED.  Fannie Mae is awarded $4,160,000.00 in damages.   A separate Order follows.


Date:  August 24, 2015

THEODORE D. CHUANG
United States District Judge